**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| LAMAD CROSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:20-CV-143 AGF |
| | ) | |
| MICHAEL MAYS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court upon the motion of self-represented plaintiff Lamad Cross for leave to commence this action without prepayment of the required filing fee. Having reviewed the motion and the financial information submitted in support, the Court will grant the motion and assess an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). Furthermore, after reviewing the complaint, the Court will direct plaintiff to file an amended complaint in accordance with the instructions set out below.

**Initial Partial Filing Fee**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

In his signed and sworn motion, plaintiff states that he is not employed, has no income, and has received no money in the past twelve months. ECF No. 2. In response to the statement on the form motion directing plaintiff to file a six-month inmate account statement from the institution where he is incarcerated, plaintiff wrote: "Refuse to Provide." *Id.* at 1. It is unclear if plaintiff refuses to provide this account statement or if his place of incarceration, the Dunklin County Justice Center, has refused to provide the statement. Regardless, based on the financial information plaintiff has submitted, the Court will assess an initial partial filing fee of $1.00. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances."). If plaintiff is unable to pay the initial partial filing fee, he must submit a copy of his prison account statement in support of his claim.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, is malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a

complaint states a plausible claim for relief is a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense.  *Id.* at 679.

When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915,

the Court accepts the well-plead facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984),

and liberally construes the complaint.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v.

Kerner*, 404 U.S. 519, 520 (1972).  A "liberal construction" means that if the essence of an

allegation is discernible, the district court should construe the plaintiff's complaint in a way that

permits his or her claim to be considered within the proper legal framework.  *Solomon v. Petray*,

795 F.3d 777, 787 (8th Cir. 2015).  However, even self-represented complainants are required to

allege facts which, if true, state a claim for relief as a matter of law.  *Martin v. Aubuchon*, 623

F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004)

(refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff

that assumed facts that had not been pleaded).

## The Complaint

Plaintiff, a pretrial detainee at Dunklin County Justice Center in Kennett, Missouri,

brings this action under 42 U.S.C. § 1983, alleging violations of his civil rights against four

defendants: (1) Officer Michael Mays, (2) Officer Brandon Perkins, (3) Sheriff Unknown Smith,

and (4) Sheriff Unknown Tinsley.  ECF No. 1 at 1-3.  According to plaintiff, the two defendant

police officers are employed by Kennett, Missouri and the Sheriffs are employed by Dunklin

County.  Plaintiff sues all four defendants in their individual capacities only.

Plaintiff alleges that defendants violated his fourth and fourteenth amendment rights

during his arrest on June 22, 2020.  On that date, plaintiff states that Mays was pursuing

plaintiff's vehicle when Mays rammed plaintiff from behind with his police car.  Plaintiff alleges

that Mays then pulled plaintiff out of the car and placed him in handcuffs.  Once cuffed, plaintiff

asserts that Mays threw him to the ground, grabbed him by the neck, and pounded his head into the ground multiple times.  Plaintiff states that Officer Perkins held a gun to plaintiff's head when plaintiff was already in handcuffs.  Plaintiff also asserts that Officer Perkins, Sheriff Smith, and Sheriff Tinsley failed to protect him from Mays when they stood by and watched Mays use excessive force on him.  ECF No. 1 at 4.

As a result of the force used on him at arrest, plaintiff asserts that he suffered a head injury and lacerations on his face, arm, wrists, knees, legs, and feet.  For relief, plaintiff seeks monetary damages from all defendants – $100,000 from Mays and $50,000 from each of the other three defendants.  ECF No. 1 at 4-5.

**Plaintiff's State Court Case**

Independent review on Missouri Case.net, the State of Missouri's online docketing system, shows that plaintiff was arrested on June 22, 2020, by the Kennett Police Department and charged in Dunklin County on July 20, 2020, with second degree kidnapping and resisting arrest.  *State v. Cross*, No. 20DU-CR00655-01 (35th Jud. Cir., 2020).  The Kennett police department arresting officer was Aaron Mays.[1]  The probable cause statement filed by Mays with the arrest in that matter supports plaintiff's statement that he was pursued by the Kennett police department and that his vehicle was rammed in the rear during that pursuit.  According to Mays, plaintiff led the Kennett Police on an extensive car chase which included plaintiff accelerating at a high rate of speed, driving his vehicle through multiple yards, failing to yield, and striking both Officer Mays' and Officer Perkins' patrol vehicles.  At one point in the pursuit, plaintiff slammed on his brakes so abruptly that Officer Mays' vehicle struck the rear of plaintiff's vehicle.  According to Mays, plaintiff was eventually apprehended and placed in

---

[1] The Court notes that plaintiff names the arresting Kennett police officer in this case as defendant "Michael Mays."

handcuffs.  As of the date of this Order, these state court charges are still pending against plaintiff.

## Discussion

Plaintiff alleges that Officer Mays used excessive force when arresting him and that the other three defendants failed to protect him from this use of force.  As plaintiff was not a convicted and sentenced prisoner at the time of arrest, the Court construes this claim under the Fourth Amendment.

"The Fourth Amendment protects citizens from being seized through excessive force by law enforcement officers."  *Thompson v. City of Monticello, Ark.*, 894 F.3d 993, 998 (8th Cir. 2018) (internal citation omitted); *see also Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir. 2005) ("The right to be free from excessive force is included under the Fourth Amendment's prohibition against unreasonable seizures of the person"); *Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000) ("The Fourth Amendment's prohibition against unreasonable seizures of the person applies to excessive-force claims that arise in the context of an arrest or investigatory stop of a free citizen") (internal quotations omitted).  The violation of this right is sufficient to support an action under §1983.  *Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1007 (8th Cir. 2003).

The Eighth Circuit recently explained how to evaluate such claims:

> When evaluating a Fourth Amendment excessive force claim under § 1983, we consider "whether the amount of force used was objectively reasonable under the particular circumstances." *Michael v. Trevena*, 899 F.3d 528, 532 (8th Cir. 2018). We evaluate the reasonableness of the force used from the perspective of a reasonable officer on the scene, not with the benefit of hindsight. *Id.* This evaluation entails careful consideration of the case's particular facts and circumstances, including: "(1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).  We may also consider the result of the use of force. *Crumley v. City of St. Paul*, 324 F.3d 1003, 1007 (8th Cir. 2003).

- 5 -

*Kohorst v. Smith*, -- F.3d --, No. 19-1955, 2020 WL 4515294, at *3 (8th Cir. Aug. 6, 2020).

In a 2014 case before the Eighth Circuit, the Court considered a discrete use of force where an officer jerked a person from the floor to his bed when the person was handcuffed and under control. *Blazek v. City of Iowa City*, 761 F.3d 920, 925 (8th Cir. 2014). The jerking of his arms was with sufficient force to cause serious injury to his shoulder area. According to the handcuffed person, he was not resisting arrest and posed no threat to the officers. The handcuffed person was not suspected of any crime and was detained only because he was present at a certain residence, wouldn't stay seated, and wouldn't identify himself. In such a case, the appellate court said that "when a person is subdued and restrained with handcuffs, a 'gratuitous and completely unnecessary act of violence' is unreasonable and violates the Fourth Amendment." *Id.* (quoting *Henderson v. Munn*, 439 F.3d 497, 503 (8th Cir. 2006)).

Here, plaintiff asserts that Mays threw him to the ground and pounded his head into the ground multiple times after plaintiff was handcuffed. Plaintiff alleges that he suffered a head injury and multiple lacerations. Plaintiff admits that his vehicle was pursued by the Kennett police prior to arrest. What plaintiff does not tell the Court, is whether he continued to resist the officers while he was in handcuffs. The Eighth Circuit has made it clear that "[a] person in handcuffs can still present a danger to officers." *Franklin v. Franklin Cty., Ark.*, 956 F.3d 1060, 1062–63 (8th Cir. 2020) (citing *United States v. Pope*, 910 F.3d 413, 417 (8th Cir. 2018)) (discussing cases allowing the use of drive-stun taser bursts on suspects who are already handcuffed).

Liberally construing the allegations of plaintiff's complaint and accepting the well-plead facts as true, the Court cannot discern from plaintiff's complaint whether he continued to pose a threat to officers after being handcuffed because plaintiff pleads no facts relating to this matter.

Because plaintiff is self-represented and the allegations of his complaint are serious in nature, he will be allowed to amend his complaint in an attempt to remedy this pleading deficiency, in accordance with the instructions set forth below.  Specifically, the Court would direct plaintiff to confirm the name of the defendant police officer who arrested him: Michael or Aaron Mays. Also, plaintiff should consider providing detailed factual allegations concerning his actions once in handcuffs, and the extent of his resulting head and laceration injuries.

Plaintiff is warned that the filing of an amended complaint **completely replaces** the original complaint, and so it must include all claims plaintiff wishes to bring.  *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect").  Any claims from the original complaint that are not included in the amended complaint will be deemed abandoned and will not be considered.  *Id.*  Plaintiff must submit the amended complaint on a court-provided form, and the amended complaint must comply with the Federal Rules of Civil Procedure.

Plaintiff should type or neatly print his amended complaint on the Court's § 1983 civil rights complaint form, which will be provided to him.  *See* E.D. Mo. L.R. 2.06(A) ("All actions brought by self-represented plaintiffs or petitioners should be filed on Court-provided forms"). If the amended complaint is handwritten, the writing must be legible.  In the "Caption" section of the court-provided form, plaintiff should clearly name every party he is intending to sue.  Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties").  If there is not enough room in the caption, plaintiff may add additional sheets of paper.  However, all the defendants must be clearly listed.  Plaintiff should fill out the complaint form in its entirety.

In the "Statement of Claim" section, plaintiff should provide a short and plain statement of the factual allegations supporting his claim.  Fed. R. Civ. P. 8(a).  Plaintiff should put each

claim into a numbered paragraph, and each paragraph should be "limited as far as practicable to a single set of circumstances."  Fed. R. Civ. P. 10(b).

The amended complaint should only include claims that arise out of the same transaction or occurrence. In other words, plaintiff should only include claims that are related to each other. Fed. R. Civ. P. 20(a)(2).  Alternatively, plaintiff may choose a single defendant and set forth as many claims as he has against that defendant.  Fed. R. Civ. P. 18(a).

Plaintiff must specify whether he intends to sue each defendant in an official capacity, an individual capacity, or both.  The failure to sue a defendant in the correct capacity may result in the dismissal of that defendant.

If plaintiff is suing a defendant in an individual capacity, he is required to allege facts demonstrating the personal responsibility of the defendant for harming him.  *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (stating that § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights").  If plaintiff is suing multiple defendants, it is important that he establish the responsibility of each separate defendant for harming him.  That is, for each defendant, plaintiff must allege facts showing how that particular defendant's acts or omissions violated his constitutional rights.  It is not enough for plaintiff to make general allegations against all the defendants as a group.  Rather, plaintiff needs to provide the role of each named defendant in this case, in order that each specific defendant can receive notice of what he or she is accused of doing.  *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (stating that the essential function of a complaint "is to give the opposing party fair notice of the nature and basis or grounds for a claim").

After receiving the amended complaint, the Court will review it pursuant to 28 U.S.C. § 1915.  Plaintiff's failure to make specific factual allegations against a defendant will result in the dismissal of that defendant. If plaintiff fails to file an amended complaint on a Court-provided

- 8 -

form within thirty days in accordance with the instructions set forth herein, the Court will dismiss this action without prejudice and without further notice to plaintiff.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed *in forma pauperis* [ECF No. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $1.00 within **thirty (30) days** of the date of this Order.  Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail to plaintiff a blank Prisoner Civil Rights Complaint form.

**IT IS FURTHER ORDERED** that, within **thirty (30) days** after the date of this Order, plaintiff shall file an amended complaint in accordance with the instructions set forth herein.

**If plaintiff fails to timely file an amended complaint in compliance with this Order, the Court will dismiss this action without prejudice and without further notice.**

Dated this 31st day of August, 2020.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE